1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    STEVEN DEL TORO,                           No.  2:22-cv-0725 DJC AC P

12                    Plaintiff,

13         v.                                     FINDINGS & RECOMMENDATIONS

14    VASUKI DARAM, et al.,

15                    Defendants.

16

17         Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18    U.S.C. § 1983.  Currently before the court are the parties' cross-motions for summary judgment.

19    ECF Nos. 52, 57.

20    I.    Procedural History

21         Upon screening the first amended complaint, the court found that plaintiff stated claims

22    for deliberate indifference against defendant Daram and for negligence against defendants Daram

23    and Schultz.[1]  ECF No. 9.  Defendant Schultz was later dismissed for failure to effect timely

24    service.  ECF No. 62.  Defendant Daram moved to partially dismiss the first amended complaint

25    (ECF No. 33), in response to which plaintiff voluntarily dismissed his request for punitive

26    damages for the professional negligence claim and damages claim against Daram in her official

27

28    _____

[1]  Schultz was initially identified as "Antwong" in the complaint, but plaintiff later stated that
defendant's correct name was Schultz and Schultz was substituted for Antwong.  ECF No. 25.

1    capacity (ECF Nos. 35, 37).  After the close of discovery, Daram filed a motion for summary

2    judgment.  ECF No. 52.  Plaintiff filed a combined opposition and cross-motion for summary

3    judgment (ECF No. 57), to which defendant has responded (ECF No. 61).

4    II.    Plaintiff's Allegations

5        Plaintiff alleges that he injured his right, middle finger on August 30, 2021, and upon

6    seeking medical attention was sent for x-rays the same day.  ECF No. 8 at 6.  Daram received

7    these results, which were interpreted by the radiologist as normal.  Id.  Daram saw plaintiff

8    multiple times between September 1 and October 25, 2021, but failed to provide any treatment

9    despite plaintiff's finger being very swollen and painful.  Id. at 6-8.

10       On October 20, 2021, plaintiff saw a hand surgeon who viewed the August 30 x-ray and

11   diagnosed a closed fracture dislocation.  Id. at 8.  On October 25, 2021, Daram saw plaintiff for a

12   follow up to his appointment with the surgeon and finally provided treatment by issuing an urgent

13   referral for hand surgery and a morphine prescription for pain.  Id.  On November 5, 2021,

14   plaintiff had hand surgery and was told that because of the delay in getting surgery, he could lose

15   mobility in his right finger.  Id.  Plaintiff asserts that he has suffered permanent damage to his

16   finger in the form of extremely limited range of motion, continued pain, and deformation.  Id.

17   Plaintiff alleges timely compliance with California's Government Claims Act.  Id. at 6, 9.

18   III.    Plaintiff's Motion for Summary Judgment

19       As part of his opposition to defendant's motion for summary judgment, plaintiff has also

20   moved for summary judgment.  ECF No. 57 at 7-8.  However, the motion is not accompanied by

21   a separate statement of undisputed facts and the factual assertions made within the motion do not

22   cite to particular portions of the record for support.  See L.R. 260(a) (requiring a separate

23   statement of facts, each supported by a citation to the record); Fed. R. Civ. P. 56(c)(1)(A)

24   (requiring assertion that fact cannot be genuinely disputed be supported by citation to the record).

25   As a result, plaintiff's arguments are unsupported and he has not provided sufficient evidence to

26   demonstrate that Daram's conduct constituted deliberate indifference or negligence.  Plaintiff has

27   therefore failed to "come forward with evidence which would entitle [him] to a directed verdict if

28   the evidence went uncontroverted at trial."  Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987

2

1   (9th Cir. 2006) (citation omitted).  For these reasons, plaintiff's motion for summary judgment

2   should be denied.  However, given plaintiff's pro se status, the content of the motion will be

3   considered as part of plaintiff's opposition to defendants' motion for summary judgment.

4       IV.    Defendant's Motion for Summary Judgment

5           A.    Defendant's Arguments

6       Defendant moves for summary judgment on plaintiff's Eighth Amendment claim on the

7   grounds that she was not deliberately indifferent to plaintiff's medical needs and alternatively

8   because she is entitled to qualified immunity.  ECF No. 52 at 13-19, 21-22.  Defendant also

9   argues she is not liable under plaintiff's general negligence theory.  Id. at 19-20.

10          B.    Plaintiff's Response

11      At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil

12  Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely

13  disputed must support the assertion by . . . citing to particular parts of materials in the record."

14  Plaintiff has also failed to file a separate document in response to defendants' statement of

15  undisputed facts that identifies which facts are admitted and which are disputed, as required by

16  Local Rule 260(b).

17      "Pro se litigants must follow the same rules of procedure that govern other litigants."

18  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

19  Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

20  established that district courts are to "construe liberally motion papers and pleadings filed by *pro*

21  *se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611

22  F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel

23  "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes

24  upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

25  Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

26  internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of

27  "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation

28  omitted).

1    Accordingly, the court considers the record before it in its entirety despite plaintiff's

2    failure to be in strict compliance with the applicable rules.  However, only those assertions in the

3    opposition which have evidentiary support in the record will be considered.  Plaintiff opposes

4    defendant's motion for summary judgment and realleges that defendant acted with deliberate

5    indifference to his serious medical needs because she failed to timely treat his injuries, causing

6    plaintiff to suffer harm.  ECF No. 57 at 1-6.  He also argues that defendant is not entitled to

7    qualified immunity.  Id. at 6.

8         C.    Legal Standards for Summary Judgment

9    Summary judgment is appropriate when the moving party "shows that there is no genuine

10   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

11   Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

12   of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

13   F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

14   moving party may accomplish this by "citing to particular parts of materials in the record,

15   including depositions, documents, electronically stored information, affidavits or declarations,

16   stipulations (including those made for purposes of the motion only), admissions, interrogatory

17   answers, or other materials" or by showing that such materials "do not establish the absence or

18   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

19   support the fact."  Fed. R. Civ. P. 56(c)(1).

20   "Where the non-moving party bears the burden of proof at trial, the moving party need

21   only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

22   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

23   Indeed, summary judgment should be entered, "after adequate time for discovery and upon

24   motion, against a party who fails to make a showing sufficient to establish the existence of an

25   element essential to that party's case, and on which that party will bear the burden of proof at

26   trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

27   of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such

28   a circumstance, summary judgment should "be granted so long as whatever is before the district

4

1    court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

2    56(c), is satisfied." Id.

3        If the moving party meets its initial responsibility, the burden then shifts to the opposing

4    party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

5    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the

6    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

7    of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

8    admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

9    Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a

10   fact "that might affect the outcome of the suit under the governing law," and that the dispute is

11   genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

12   party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

13       In the endeavor to establish the existence of a factual dispute, the opposing party need not

14   establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

15   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

16   trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

17   (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the

18   "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

19   whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal

20   quotation marks omitted).

21       "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

22   court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

23   v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the

24   opposing party's obligation to produce a factual predicate from which the inference may be

25   drawn. See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

26   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

27   some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations

28   omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the

5

1  non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391

2  U.S. at 289).

3  Defendants simultaneously served plaintiff with notice of the requirements for opposing a

4  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

5  summary judgment.  ECF No. 52-27; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.

6  1988) (pro se prisoners must be provided with notice of the requirements for summary judgment);

7  Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

8  D.    Undisputed Material Facts

9  Plaintiff did not separately and individually respond to defendant's statement of

10  undisputed facts and the facts are therefore deemed undisputed except as otherwise discussed.

11  At all times relevant to the complaint, plaintiff was an inmate at Mule Creek State Prison

12  and defendant was employed there as a doctor of internal medicine and served as plaintiff's

13  primary care physician.  Defendant's Statement of Undisputed Facts (DSUF) (ECF No. 52) ¶¶ 1-

14  3.

15  On August 30, 2021, Plaintiff suffered an injury to his right middle finger.  DSUF ¶ 4;

16  ECF No. 57 at 2.  That same day, plaintiff was examined by a registered nurse who noted

17  plaintiff's finger appeared to be swollen with minimal redness, tender to touch, unable to move,

18  and causing pain.  DSUF ¶ 5.  An x-ray of plaintiff's right middle finger was ordered and

19  conducted that day.  DSUF ¶ 6.  Dr. Schultz reviewed the x-ray and issued a radiology report that

20  showed a fracture deformity of the third middle phalanx which appeared old, but no new, acute

21  fracture.  DSUF ¶ 7.  The report also recommended a follow-up x-ray in ten to fourteen days if

22  there was a strong suspicion of radiographic occult fracture.[2]  Id.

23  Plaintiff asserts that defendant examined him on September 1, 2021, but provided no

24  treatment even though his finger was "extremely swollen, turning black, and he was in

25  excruciating pain."  ECF No. 8 at 7; ECF No. 57 at 2.

26

27  [2]  An "occult fracture" is a fracture that "does not appear well on an X-ray."  Possible Occult
   Fracture, Cedars Sinai, https://www.cedars-sinai.org/health-library/diseases-and-
   conditions/p/possible-occult-fracture.html [https://perma.cc/9HYH-P8RV] (last visited September
28  14, 2025).

On September 10, 2021, defendant examined plaintiff, noting plaintiff's finger was still swollen and painful.  DSUF ¶ 8.  Defendant ordered another x-ray for further analysis, as well as a large splint, an Ace wrap, and ice for plaintiff's injured finger.  DSUF ¶¶ 9-10; ECF No. 57 at 2.  Defendant also advised plaintiff to take nonsteroidal anti-inflammatory drugs (NSAIDs) to assist with any pain and swelling.[3]  DSUF ¶ 10.  Plaintiff's medical records indicate that at that time, he already had an active keep on person prescription for one 600mg tablet of ibuprofen to be taken three times a day on an as needed basis.  ECF No. 52-5 at 3.

On September 17, 2021, another set of x-rays were taken and a new radiology report was issued which also showed no new fracture or dislocation of plaintiff's finger.  DSUF ¶ 11.  Defendant examined plaintiff's injured finger again and also analyzed the radiology reports.  DSUF ¶ 12.  She noted that the finger was still very swollen with no range of motion[4] and was painful with palpation, that plaintiff indicated he has suffered previous damage to that finger, and that there was no showing of a new fracture or dislocation.  ECF No. 8 at 7; ECF No. 52-8 at 2; ECF No. 52-9 at 2; ECF No. 57 at 2.  Defendant referred plaintiff to a hand surgeon for further evaluation and possible surgery on a medium priority basis.  DSUF ¶ 14; ECF No. 52-9 at 2; ECF No. 57 at 2.

Plaintiff asserts that a registered nurse evaluated his finger on September 24, 2021, and found it to be swollen and that he was in extreme pain.  ECF No. 8 at 7.  He states that the nurse consulted with defendant but offers no information regarding the outcome of the consult.  Id.

On October 8, 2021, defendant examined plaintiff's finger again due to continued pain and informed plaintiff that although the referral to the orthopedic surgeon was still pending, she would call the specialist to see if an earlier appointment was available.  DSUF ¶ 15.  She noted that plaintiff's finger was "still swollen and painful."  ECF No. 52-10 at 2.

---

[3]  Plaintiff admits that defendant recommended pain medication but argues that she did not prescribe anything, leaving him without medical support or relief from pain.  ECF No. 57 at 2-3.  However, DSUF ¶ 10 does not state that defendant prescribed him medication so plaintiff's statements do not create a dispute and DSUF ¶ 10 is therefore deemed undisputed.

[4]  Defendant's notes state "normal range of motion" but the request for hand surgery evaluation states "no range of motion."  ECF No. 52-8 at 2; ECF No. 52-9 at 2.  The court assumes that the notation of "no range of motion" is correct.

On October 20, 2021, plaintiff was examined by Dr. Dowback, an orthopedist at San Joaquin General Hospital, who ordered more x-rays for analysis.  DSUF ¶ 16; ECF No. 57 at 2.  Dowback's evaluation showed a closed fracture dislocation of the proximal interphalangeal joint of plaintiff's right middle finger.  DSUF ¶ 17.  Dowback ordered additional blood tests and an electrocardiogram and included instructions to "[p]lan surgery on specific date."  Id.; ECF No. 52-11 at 2-3.

On October 25, 2021, defendant re-examined plaintiff and issued an urgent referral for surgery on plaintiff's right middle finger.  DSUF ¶ 18; ECF No. 57 at 3.  She also ordered the blood tests and EKG requested by Dowback.  DSUF ¶ 19.  During the exam, plaintiff expressed continued pain and inability to flex or extend his finger and stated that he could not take the advised NSAID medication[5] because it caused a rash and constipation.  DSUF ¶ 21; ECF No. 52-12 at 2; ECF No. 57 at 3.  Plaintiff was prescribed morphine and informed of the possibility that he could break out in a rash since he had a similar reaction to codeine.  DSUF ¶ 21; ECF No. 52-12 at 2; ECF No. 8 at 8.

Defendant ceased her duties as plaintiff's primary care physician on or about November 1, 2021.  DSUF ¶ 22.  There is no indication from either party that defendant was involved in the treatment of plaintiff's finger after this date.

On November 5, 2021, plaintiff underwent open reduction and internal fixation surgery by Dowback.  DSUF ¶ 23; ECF No. 57 at 3.  On November 24, 2024, plaintiff saw Dowback for a follow-up appointment which showed that his right middle finger was well aligned with a range of motion in his finger joints, no sensory deprivation, and the sutures were correctly in place.  DSUF ¶ 25.  Plaintiff received physical therapy to improve his finger's range of motion and has twice declined evaluation for further surgical intervention to address his mobility limitation.

---

[5]  Both DSUF ¶ 21 and plaintiff's opposition state that plaintiff suffered a rash and constipation from taking NSAIDs.  DSUF ¶ 21; ECF No. 57 at 3.  However, plaintiff's medical records indicate that he reported the symptoms in relation to taking Tylenol 3, and he was advised that morphine could also cause a rash since he had a reaction with codeine, which is an ingredient in Tylenol 3.  ECF No. 52-11 at 2.  Regardless, since plaintiff agrees that the symptoms were caused by NSAIDs and defendant prescribed him different medication upon reporting side effects, the discrepancy does not appear material.

1  DSUF ¶¶ 27-30.

2         E.     Discussion

3                i.     Deliberate Indifference

4                       a.     Legal Standard

5         "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

6  must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091,

7  1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires plaintiff

8  to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition

9  could result in further significant injury or the unnecessary and wanton infliction of pain,'" and

10  (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal

11  quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

12  A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to

13  respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."

14  Id. (citing McGuckin, 974 F.2d at 1060).  Examples of a serious medical need include "[t]he

15  existence of an injury that a reasonable doctor or patient would find important and worthy of

16  comment or treatment; the presence of a medical condition that significantly affects an

17  individual's daily activities; or the existence of chronic and substantial pain." McGuckin, 974

18  F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990); Hunt v.

19  Dental Dep't, 865 F.2d 198, 200-01 (9th Cir. 1989)), overruled on other grounds by WMX

20  Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

21        "While poor medical treatment will at a certain point rise to the level of constitutional

22  violation, mere malpractice, or even gross negligence, does not suffice." Wood, 900 F.2d at

23  1334.  Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

24  which is so obvious that it should be known) is insufficient to establish an Eighth Amendment

25  violation. Farmer v. Brennan, 511 U.S. 825, 837 & n.5 (1994).  It is not enough that a reasonable

26  person would have known of the risk or that a defendant should have known of the risk. Id. at

27  843 n.8.  Rather, deliberate indifference is established only where the defendant subjectively

28  "knows of and disregards an excessive risk to inmate health or safety." Id. at 837.

1      A difference of opinion between an inmate and prison medical personnel—or between

2    medical professionals—regarding the appropriate course of treatment does not by itself amount to

3    deliberate indifference to serious medical needs.  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th

4    Cir. 2004) (citation omitted); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (citations

5    omitted).  To establish that a difference of opinion rises to the level of deliberate indifference,

6    plaintiff "must show that the chosen course of treatment 'was medically unacceptable under the

7    circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's]

8    health.'"  Toguchi, 391 F.3d at 1058 (alteration in original) (quoting Jackson v. McIntosh, 90

9    F.3d 330, 332 (9th Cir. 1996)).

10                                      b.    Analysis

11      In support of her motion for summary judgment, defendant has submitted the declaration

12    of Dr. Nickles and incorporated the declaration into her statement of facts.  ECF No. 52-24;

13    DSUF ¶ 31.  Dr. Nickels opines that defendant acted in compliance with the standard of medical

14    care for her evaluation, treatment, and pain management of plaintiff.  DSUF ¶ 31.  He states that

15    defendant saw plaintiff in a timely fashion, ordered the appropriate diagnostic study, and made

16    the appropriate referral to a hand specialist.  ECF No. 52-24 at 3, ¶ 6.  Though plaintiff continued

17    to complain of finger deformity and limited range of motion after the surgery, Dr. Nickles opines

18    that while plaintiff believes he experienced a poor surgical outcome, that outcome was not caused

19    by any treatment or lack of treatment by defendant.  ECF No. 52-24 at 3, ¶ 6.

20      In opposition to the motion, plaintiff argues that defendant was deliberately indifferent

21    because she did not take his injury seriously and failed to prescribe him with any pain medication

22    until he was prescribed morphine on October 25, 2021.  ECF No. 57 at 4-5.  Plaintiff states that

23    his injury was obvious due to swelling and the inability to flex the injured finger, and that

24    defendant only prescribed morphine after Dr. Dowback's October 20, 2021 evaluation which

25    "pulled back the curtain on defendant's wrongdoing."  Id. at 5, 7.  He asks why defendant would

26    prescribe morphine—"the strongest painkiller known"—after previously recommending only

27    NSAIDs and concludes that it "was solely an attempt at damage control."  Id. at 5.  However, the

28    medical records clearly reflect that plaintiff was already prescribed pain medication at the time he

10

saw defendant, and plaintiff has not established that he is competent to offer any opinions as to whether defendant's initial NSAID recommendation was inappropriate, nor does he cite to any evidence to support this claim. Moreover, it is undisputed that after plaintiff informed defendant that he experienced a rash and constipation from taking the recommended NSAIDs defendant prescribed him with morphine, indicating that she was not ignoring his condition.[6] Finally, plaintiff provides no evidence regarding the relative strength of the dosage he was provided to support his claim that the switch from NSAIDs to morphine was nothing more than "damage control" and the inference that the original pain medication was therefore inappropriate. Plaintiff's arguments regarding defendant's medication recommendations and prescriptions are based on speculation and his unqualified opinion and are not sufficient to create a material dispute of fact.

Plaintiff also argues that defendant's deliberate indifference is demonstrated by the length of time it took for him to receive surgery after the initial injury. ECF No. 57 at 4, 6. He argues that "a joint injury, if not treated promptly and effectively, WILL result in permanent disability of that joint and its associated member" and that "delayed surgery would result in permanent disability." Id. at 4. He further argues that the delay in surgery caused him permanent damage and emphasizes that from the date of his injury it took over two months to undergo the necessary surgery. Id. at 3-4, 6. In an effort to support these arguments, plaintiff points to the initial referral to Dr. Dowback being categorized as a "medium priority" as evidence that defendant delayed the specialist examination by a month and caused him to experience continued unabated pain. Id. at 2. He also claims that Dr. Dowback directed defendant to schedule his hand surgery within a week of the October 20, 2021 consultation and informed him that since it had taken so long from his initial injury to the time of surgery, he could lose mobility in his right middle finger. Id. at 3. However, these claims are unsupported by the record.

With respect to scheduling, plaintiff does not present evidence that defendant's prioritization of his initial evaluation was medically inappropriate or that defendant had control

---

[6] There is also some indication that he was prescribed morphine because he had a similar reaction to Tylenol 3.

11

1    over scheduling and deliberately pushed out plaintiff's appointment.  In contrast, the evidence

2    shows that when plaintiff came to defendant with complaints of continued pain, she called the

3    specialist to see if an earlier appointment was available.  DSUF ¶ 15.  As for scheduling of the

4    surgery, plaintiff's medical records reflect that Dr. Dowback ordered blood tests and an

5    electrocardiogram and requested they be completed within the week, and defendant ordered the

6    requested tests.  ECF No. 52-11 at 2 ("We will need a CBC CMP PT PTT INR EKG.  Would like

7    to do this within the next week."); ECF No. 52-12 at 2-3 (ordering tests).  There is no indication

8    that he ordered surgery to be scheduled within the week.  ECF No. 52-11 at 3 (follow up

9    instructions stating "[p]lan surgery on specific date").  Finally, plaintiff argues that the delay in

10   surgery was harmful, but he is not competent to make such an evaluation.  Plaintiff's own account

11   of an alleged statement by Dr. Dowback is inadmissible hearsay; it is neither reflected in or

12   otherwise supported by the medical records authored by Dowback.

13          Plaintiff has failed to establish that he is competent to provide expert opinions on the

14   standards and appropriateness of the pain medication prescribed or the timing of his treatment,

15   including surgery, and he has offered no other evidence supporting his claims.  Absent any

16   competent evidence, plaintiff's arguments amount to nothing more than a difference of opinion

17   that cannot support a claim of deliberate indifference.  Toguchi, 391 F.3d at 1058.  For these

18   reasons, plaintiff has failed to establish a dispute of fact regarding defendant's treatment plan that

19   would indicate that defendant was deliberately indifferent to his medical needs and defendant's

20   motion for summary judgment should be granted.

21                          c.       Qualified Immunity

22          "[G]overnment officials performing discretionary functions generally are shielded from

23   liability for civil damages insofar as their conduct does not violate clearly established statutory or

24   constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457

25   U.S. 800, 818 (1982) (citations omitted).  In analyzing a qualified immunity defense, the court

26   must consider the following: (1) whether the alleged facts, taken in the light most favorable to the

27   plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2)

28   whether the right at issue was clearly established at the time of the incident.  Saucier v. Katz, 533

1   U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009)

2   (overruling Saucier's requirement that the two prongs be decided sequentially).  Since the facts

3   taken in the light most favorable to plaintiff do not show the violation of a constitutional right, it

4   is not necessary for the court to address defendant's qualified immunity argument and the court

5   declines to do so.

6                               ii.        Professional Negligence Claim

7           Subject to the conditions set forth in 28 U.S.C. § 1367(c), district courts may decline to

8   exercise supplemental jurisdiction over state law claims.  Acri v. Varian Assocs., Inc., 114 F.3d

9   999, 1000 (9th Cir. 1997) (en banc).  The court's decision whether to exercise supplemental

10  jurisdiction should be informed by "values of economy, convenience, fairness, and comity."  Id.

11  at 1001 (citations and internal quotation marks omitted).  Further, primary responsibility for

12  developing and applying state law rests with the state courts.  Therefore, when federal claims are

13  eliminated before trial, district courts should usually decline to exercise supplemental jurisdiction.

14  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 & n.7 (1988) (citation omitted); Gini v. Las

15  Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994) ("[I]n the usual case in which

16  federal-law claims are eliminated before trial, the balance of factors . . . will point toward

17  declining to exercise jurisdiction over the remaining state law claims." (alteration in original)

18  (quoting Schneider v. TRW, Inc., 938 F.2d 986, 993 (9th Cir. 1991))).  As outlined above, it is

19  recommended that defendant's motion for summary judgment be granted as to the federal law

20  claim and the undersigned therefore recommends that the court decline to exercise supplemental

21  jurisdiction over plaintiff's state law claims.

22      V.      Plain Language Summary of this Order for a Pro Se Litigant

23          It is being recommended that your motion for summary judgment be denied because it is

24  not properly supported with evidence.  It is also being recommended that defendant's motion for

25  summary judgment be granted and this case be dismissed because there is no evidence that shows

26  that the care and treatment provided by defendant was medically unacceptable and constituted

27  deliberate indifference to your medical needs.  Because it is being recommended that your Eighth

28  Amendment claim be dismissed, it is also being recommended that the court decline to address

1    the state professional negligence claim.

2                                        CONCLUSION

3           Accordingly, IT IS HEREBY RECOMMENDED that:

4           1.  Plaintiff's cross motion for summary judgment (ECF No. 57) be DENIED;

5           2.  Defendant's motion for summary judgment (ECF No. 52) be GRANTED; and

6           3.  Judgment be entered in favor of defendant.

7           These findings and recommendations are submitted to the United States District Judge

8    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

9    after being served with these findings and recommendations, any party may file written

10   objections with the court and serve a copy on all parties.  Such a document should be captioned

11   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

12   objections shall be served and filed within fourteen days after service of the objections.  The

13   parties are advised that failure to file objections within the specified time may waive the right to

14   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15   DATED: September 22, 2025

16

17                                        ALLISON CLAIRE
                                          UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24

25

26

27

28

                                              14